IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:08CV523-1-MU

| | |
|---|---|
| RODNEY CHRISTOPHER CRAIG, )<br>)<br>Petitioner, )<br>)<br>v. )<br>)<br>NORA HUNT, )<br>)<br>Respondent. )<br>_____) | **O R D E R** |

**THIS MATTER** comes before the Court upon Respondent's Motion for Summary Judgment (Doc. No. 6), filed January 12, 2009.

Upon a review of the record, the arguments, and applicable authorities, the Court finds that Respondent's Motion for Summary Judgment (Doc. No. 6) should be <u>granted</u> and Petitioner's § 2254 petition for Writ of Habeas Corpus (Doc. No. 1) should be <u>dismissed</u>.

## PROCEDURAL BACKGROUND

On August 30, 2005, Petitioner was convicted in the Superior Court of Mecklenburg County, after a trial by jury, of first-degree murder under the felony murder rule, first-degree burglary, and second-degree kidnaping. The trial judge sentenced Petitioner to life imprisonment without parole on the first-degree felony murder charge; a consecutive sentence of 117 to 150 months imprisonment for the first-degree burglary conviction; and a consecutive sentence of 46 to 65 months imprisonment on the kidnaping conviction.

Petitioner noticed an appeal of right to the North Carolina Court of Appeals, and in an

unpublished, unanimous opinion, the court of appeals vacated Petitioner's first-degree burglary conviction but found no error in Petitioner's remaining criminal judgments. State v. Craig, 654 S.E.2d 832 (N.C. App. Jan. 15, 2008)(unpublished). On February 11, 2008, Petitioner filed a petition for discretionary review in the North Carolina supreme Court which was denied on April 10, 2008. Petitioner has not filed any post-conviction motions.

On November 18, 2008, Petitioner filed the instant federal habeas petition. In his petition Petitioner asserts four claims: 1) the trial court erred in admitting hearsay testimony in violation of his rights under the Confrontation Clause; 2) the trial court erred in failing to grant Petitioner's "motion to dismiss for mistrial and request for the Court to enter a judgment of acquittal;" 3) the State failed to prove beyond a reasonable doubt that Petitioner was guilty of the charges against him and that he was the perpetrator; and 4) the trial court erred in instructing the jury a second time as to the first-degree felony murder.

## ANALYSIS

### A. APPLICABLE LAW

The threshold inquiries for a federal court reviewing a federal habeas petition are whether the petitioner has exhausted his claims before the appropriate state courts and whether those claims are procedurally barred. 28 U.S.C. § 2254. In order to exhaust a claim a petitioner must have fairly presented it to the state courts. See Baker v. Corcoran, 220 F.3d 276, 288 (4th Cir. 2000).

If a petitioner's claim is unexhausted, it may be treated as exhausted if it is clear that the claim would be procedurally barred under state law if the petitioner attempted to present it to the state court. See id. However, when the procedural bar that gives rise to exhaustion provides an

2

independent and adequate state law ground for the conviction and sentence it prevents federal habeas review of the defaulted claim unless the petitioner can establish cause and prejudice for the default. See id.

If a petitioner's claims are exhausted and not procedurally barred, the federal court must next examine whether or not the petitioner's claims were "adjudicated on the merits" by the state court. If the claim was properly presented to the state court and the state court adjudicated it, the deferential standard of review set forth in 28 U.S.C. § 2254(d) applies. If a petitioner has properly presented a claim to the state court but the state court has not adjudicated the claim on the merits,[1] a federal court reviews the claims questions of law and mixed questions of law and fact de novo. Angelone v. Weeks, 176 F.3d 249, 258 (4th Cir. 1999), aff'd, 528 U.S. 225 (2000).

The standard of review set forth in § 2254(d) is to be applied to "all claims 'adjudicated on the merits,' that is, those claims substantively reviewed and finally determined as evidenced by the state court's issuance of a formal judgment or decree." Thomas v. Davis, 192 F.3d 445, 455 (4th Cir. 1999). The standard of review is "quite deferential to the rulings of the state court." Burch v. Corcoran, 273 F.3d 577, 583 (4th Cir. 2001). This deference extends to summary dismissals. See Fisher v. Lee, 215 F.3d 438, 446 (4th Cir. 2000).

Pursuant to § 2254(d) a federal court may not grant a writ of habeas corpus unless the state court's adjudication: (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court

---

[1] If the state court has not ruled on the merits of a claim because it has expressly denied a habeas petitioner's claim based upon an independent and adequate state procedural rule such claim is considered procedurally defaulted in federal court. See Breard v. Pruett, 134 F.3d 615, 619 (4th Cir. 1998).

3

of the United States" . . . ; or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding . . . ." Id. (internal citations omitted).

The Supreme Court has explained that a state court adjudication is "contrary" to clearly established federal law, only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 413 (2000), quoted in Burch. An unreasonable application is different from an incorrect application of federal law, the former being the requisite showing. Therefore, this Court may not issue the writ even if it concludes in its own independent review, that the relevant state court merely made an incorrect or erroneous application of the correct federal principles. Id.

## B. EXHAUSTION/PROCEDURAL DEFAULT

A prisoner is required to exhaust the remedies available to him in the state courts before he files a writ of habeas corpus in the federal courts. 28 U.S.C. § 2254(b)(1)(A). The United States Supreme Court has held that § 2254's exhaustion requirement requires "state prisoners to give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838 (1999). This "one full opportunity" includes filing petitions for discretionary review when that review is part of the ordinary appellate procedure in the State. Id.

In North Carolina, a petitioner may satisfy § 2254's exhaustion requirement by directly appealing his conviction to the North Carolina Court of Appeals and then petitioning the North Carolina Supreme Court for discretionary review or by filing a state post-conviction proceeding

and petitioning the North Carolina Court of Appeals for a writ of certiorari.  See N. C. Gen. Stat. § 7A-31; N.C. Gen. Stat. § 15A-1422.

A review of Petitioner's direct appeal reveals that except for his Confrontation Clause claim with regard to the admission of the testimony of Officers Colligan and Hopkins, Petitioner did not raise his federal habeas petition claims in his direct appeal.  As Petitioner has not filed a state post-conviction action, he has not exhausted these claims.

If Petitioner were to return to state court and attempt to raise these claims, they would be considered procedurally barred pursuant to North Carolina's mandatory post-conviction procedural bar statute.  The failure to raise a claim on direct review results in it being procedurally defaulted.  See N.C. Gen. Stat. § 15A-1419.  The procedural default rule of § 15A-1419(a) and (b) is an adequate and independent state ground precluding habeas review.  See Williams v. French, 146 F.3d 203, 209 (4th Cir. 1998), cert. denied, 525 U.S. 1155 (1999).  Consequently, Petitioner has procedurally defaulted this claim.  Cf. Kornahrens v. Evatt, 66 F.3d 1350, 1357 (4th Cir. 1995) ("[I]f a defendant defaults by not following proper state appellate procedure, causing the state courts to rule against him solely on state-law procedural grounds, [the federal courts] have no power to review his defaulted issues because they are based solely on state procedural grounds rather than federal constitutional grounds").

A petitioner may overcome a finding of procedural default by showing cause for the default and actual prejudice arising from the asserted constitutional error.  See Breard v. Pruett, 134 F.3d 615, 620 (4th Cir.), cert. denied, 523 U.S. 371 (1998).  Petitioner, asserts that his appellate counsel's ineffectiveness caused him to fail to raise these claims on direct review.  Petitioner , however, has never raised an ineffective assistance of appellate counsel claim in state

court. As such, any claim by Petitioner that his appellate counsel's failure to raise this claim constituted cause so as to excuse his procedural default however, is itself unexhausted. See Murray v. Carrier, 477 U.S. 478, 488-89 (1986)(ineffective assistance of counsel claim used to excuse procedural default must itself be exhausted in state court proceedings). Consequently, this Court holds that all of Petitioner's federal habeas claims except his claim with regard to the admission of the testimony of Officers Colligan and Hopkins are procedurally defaulted

### C. CONFRONTATION CLAUSE

Petitioner alleges that the testimony of Officers Colligan and Hopkins was erroneously admitted in violation of his constitutional rights under the Confrontation Clause. Petitioner raised this claim on direct review. After citing to the applicable Supreme Court precedent, the North Carolina Court of Appeals denied this claim stating that:

> In the case sub judice, the statements made to Officers Hopkins and Colligan were made by the victim following 911 calls to report threats made by defendant. Defendant argues that these statements are more similar to Hammon because there was no immediate danger to the victim, and the statements took place after the events had taken place, thus converting this into a criminal investigation to prove past events. We disagree. In Davis the Supreme Court relied on multiple factors to determine that the Hammon statements were testimonial. Similarly to Crawford, the Court found the formal features of the interrogation, the separation of the declarant for the purpose of that interrogation, as well as the amount of time between the incident and the interrogation all relevant considerations. (citation omitted). When evaluating the Davis statements the Court found the difference in the level of formality "striking" in finding them nontestimonial. (citation omitted)
>
> In the present case, officers each responded to emergency calls and questioned the victim to "enable police assistance to meet an ongoing emergency." Even though defendant was not present when the officers arrived, the officers were responding to an emergency call and could not have knowledge of the risks to the

6

> victim or themselves unless they questioned the victim to
> determine the situation. Officers may, and should, respond to 911
> calls as if they are emergencies until they obtain sufficient
> information that indicates otherwise.
>
> The record indicates that the questioning never went beyond this
> initial informal interview to establish the facts surrounding the call
> and determine that the victim and officers were not in any risk of
> harm. If, as in Hammon, upon determining the emergency situation
> has passed, police continue their interrogation in a more formal
> way, the statements may be testimonial. However, the officers
> questioned the victim "under circumstances objectively indicating
> that the primary purpose [was] to enable police assistance to meet
> an ongoing emergency." Therefore, the statements by the victim
> were nontestimonial, and the defendant's Confrontation Clause
> rights were not violated by their admission.

State v. Craig, 654 S.E.2d 832 * 6 (N.C. App. Jan. 15, 2008)(unpublished).

Because the state court adjudicated this claim on the merits, in order to prevail on federal habeas review, Petitioner must establish that the state court's ruling resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Supreme Court precedent or that resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d). Moreover, this Court presumes the state court's factual findings are correct. 28 U.S.C. § 2254(e)(1). Petitioner may overcome this presumption by establishing by clear and convincing evidence that the factual findings are incorrect. 28 U.S.C. § 2254(e)(1).

The Supreme Court precedent at issue is Crawford v. Washington, 541 U.S. 36 (2004). In Crawford the Supreme Court held that the admission of a tape-recorded out-of-court statement to police officers at the police station by the defendant's wife, who was mirandized, violated the Confrontation Clause. Crawford, 541 U.S. at 68. In so holding, the Supreme Court rejected the notion that the admission of an out-of-court statement by a non-testifying witness does not

violate the Confrontation Clause if a sufficient indicia of reliability of the statement exists. Id. at 61. The Court concluded that the right to confrontation bars the "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." Id. at 53-54. As such, once an out-of-court statement is determined to be testimonial it may not be admitted into evidence unless the defendant had an opportunity to cross-examine the witness. Id.

In announcing the rule in Crawford, the Supreme Court stated that it "left for another day any effort to spell out a comprehensive definition of 'testimonial.'" Id. at 68. The majority acknowledged that "our refusal to articulate a comprehensive definition in this case will cause interim uncertainty." Id. at 68 n.10. The Crawford court did not provide more guidance on the definition of testimonial because the case before it involved a situation where the statement at issue qualified under any conceivable definition of "interrogation." Crawford, 541 U.S. at 53 n.4.

In Davis v. Washington, 547 U.S. 813 (2006), the Supreme Court refined the meaning of "testimonial" in a pair of cases involving police interrogation. Id. at 826. In the Davis case the Court considered whether statements made by a victim to a 911 operator were testimonial. In the companion case, Hammon, the Court considered whether statements made to police officers at the scene of a domestic disturbance were testimonial.

In distinguishing between testimonial and nontestimonial statements, the Supreme Court concluded in Davis that:

> [s]tatements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the

> circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.

Id. at 822 .

In reviewing the two cases before it, the Court determined that the statement in Davis was nontestimonial as it was taken during an on-going emergency. In so holding, the Court noted that a "911 call, and at least the initial interrogation conducted in connection with a 911call, is ordinarily not designed to 'establish or prove' some past fact, but to describe current circumstances requiring police assistance." Id. at 827. The Davis Court noted that the victim spoke of events as they were actually happening rather than describing past events. Id. at 827. Moreover, the victim "was facing an ongoing emergency" and placing a call for help against a bona fide physical threat." Id. The elicited statements of the victim in Davis "were necessary to be able to resolve the present emergency, rather than to simply learn . . . what had happened in the past." Id. Finally, the conversation between the victim and the 911 operator was informal, as the victim's "frantic answers were provided over the phone, in an environment that was not tranquil, or even . . . safe." Id.

In contrast, in the Hammon case the Supreme Court concluded that the statement at issue was testimonial. In so ruling the Court noted that "the interrogation was part of an investigation into possibly criminal past conduct - - as indeed the testifying officer expressly acknowledged." The Court based its ruling on the fact that there was no emergency in progress – indeed when the officer first arrived at the scene the victim told the police that things were fine and there was no immediate threat to her person.

The Court was careful, however, not to draw a bright line distinction between what

happens prior to law enforcement arrival on the crime scene and after. The Court specifically stated "[a]lthough we necessarily reject the . . . implication that virtually any 'initial inquiries' at the crime scene will not be testimonial, we do not hold the opposite - - that no questions at the scene will yield nontestimonial answers. We have already observed of domestic disputes that the "[o]fficers called to investigate . . . need to know whom they are dealing with in order to assess the situation, the threat to their own safety, and possibly danger to the potential victim." Id. at 832.

Petitioner makes no attempt to set forth why the North Carolina Court of Appeals opinion was an unreasonable application of Crawford or Davis, nor does this Court find that it is. In order to prevail on habeas review a petitioner must prove more than that the state court proceeding was incorrect. In Williams v. Taylor the Supreme Court emphasized that "unreasonable" is not the same as "incorrect." See Williams v. Taylor, 529 U.S. 362, 411 (2000). It is simply not enough to establish that Petitioner's case could be reasonably decided differently. Rather a petitioner must establish that the state court's decision was objectively unreasonable. This Petitioner does not do so and his claim fails.

Finally, even if this Court concluded that the state appellate court unreasonably applied the Crawford/Davis standard, this Court must review Petitioner's claim de novo. Jones v. Polk, 401 F.3d 257, 265 (4th Cir. 2005). As part of this process, this Court cannot grant Petitioner's writ of habeas corpus if the error was harmless. Id. The harmless error standard applicable in habeas proceedings is the standard set forth in Brecht v. Abrahamson, 507 U.S. 619 (1993). See Fry v. Pliler, 127 S. Ct. 2321, 2328 (2007)(holding that the Brecht-O'Neal standard applies in all § 2254 cases, even post-AEDPA ones).

Under the Brecht standard, a habeas petitioner is entitled to relief only if a habeas court is "in grave doubt about whether a trial error of federal law had substantial and injurious effect or influence in determining the jury's verdict." O'Neal v. McAninch, 513 U.S. 432, 436 (1995). "'Grave doubt' exists when, in light of the entire record, the matter is so evenly balanced that the court feels itself in a 'virtual equipoise' regarding the error's harmlessness." Richmond v. Polk, 375 F.3d 309, 335 (4th Cir. 2004). The proper inquiry is not "merely whether there was enough to support the result, apart from the phase affected by the error. It is rather, even so, whether the error itself had substantial influence." Kotteakos v. United States, 328 U.S. 750, 765 (1946). In analyzing whether an error is harmless under this standard a habeas court must look to "the impact of the thing done wrong . . . in the total setting. Id. at 764. The Supreme Court has reasoned that granting habeas relief to a petitioner merely because there may be a "reasonable probability" that a trial error contributed to the verdict would be contrary to the historic purpose of habeas corpus - "to afford relief [only] to those whom society has 'grievously wronged.'" Brecht, 507 U.S. at 637.

In assessing whether an error was harmless, the Brecht court considered the prominence of the constitutional error, whether the improperly admitted evidence was cumulative, and the strength of the prosecution's other evidence. Brecht, 507 U.S. at 639.

In the instant case, a substantial amount of other compelling admissible evidence established that Petitioner's relationship with Ms. Lindsey was abusive. For example, Yasha Hopkins, Ms. Lindsey's niece, testified that Petitioner was very controlling in the relationship insofar as her clothing, where she could go, and how long she could stay. (Trial Tr. 562.) According to Hopkins, Petitioner would call Ms. Lindsey every fifteen to thirty minutes. (Trial

11

Tr. 562.) Moreover, in 2001, Hopkins witnessed Petitioner choke Ms. Lindsey at a family gathering. (Trial Tr. 565.) On another occasion at her uncle's house, Hopkins saw Petitioner punch Ms. Lindsay in the eye and drag her down the steps. (Trial Tr. 566.) On a third occasion in 2001, Hopkins saw Petitioner punch Ms. Lindsay in the eye. (Trial Tr. 567.) She also saw marks on Ms. Lindsay's neck which she told Hopkins were caused by Petitioner choking her. (Trial Tr. 568.) Ms. Lindsay also told Hopkins that Petitioner had put a gun in her mouth. (Trial Tr. 569.) On two occasions Ms. Lindsay stated that she was afraid to leave Petitioner because she was afraid he would kill her. (Trial Tr. 569.) Hopkins also testified that two days before Ms. Lindsay was killed, Petitioner came to Hopkins' house looking for Ms. Lindsay and stated that someone was going to find Ms. Lindsay dead from the lifestyle that she was leading. (Trial Tr. 569-70.)

In addition to Hopkins' testimony, the prosecution also called Petitioner's ex-wife, Sharon McGinnis, to testify. McGinnis testified that in January 2000, Petitioner forced her and her children into a bedroom and said that he was going to kill all of them. (Trial Tr. 616-18.) He pointed a gun at her while she begged for their lives. (Trial Tr. 605, 616-18.) McGinnis also testified that on another occasion, Petitioner tied her up and beat her after taking her away from a cook-out at her sister's house. (Trial Tr. 619.)

In addition to the evidence of prior abuse as detailed above, overwhelming evidence was presented supporting the conclusion that Petitioner shot and killed Ms. Lindsay. As set forth in the appellate court's opinion, eyewitness testimony from Kathy Edwards established that on the night in question she answered the door where she and Ms. Lindsay were living and two armed men, one of whom was Petitioner, rushed in. Two more gunmen entered. Ten minutes later Ms.

Lindsay returned home. At that time Ms. Lindsay was forced by Petitioner and another gunman into a bedroom. Edwards testified that she could hear Petitioner and Ms. Lindsay talking in the bedroom. She heard Ms. Lindsay say "Baby, you know you aint fixing to shoot me," and Petitioner replied, "Bitch, you know I got to kill you." Then Edwards heard four shots. State v. Craig, 654 S.E.2d 832 (N.C. App. Jan. 15, 2008)(unpublished); see also (Trial Tr. 393-438.) In addition, Carlton Burris, Peter River, and Karon Tucker, three of Petitioner's accomplices, testified that Petitioner shot the victim. (Trial Tr. 635-716; 717-60, 785-877.)

Given the overwhelming evidence of Petitioner's abusive relationship with women in general and Ms. Lindsay in particular, coupled with credible eyewitness testimony as to Petitioner's role in the events, this Court concludes that the admission of one or both of the statements challenged by Petitioner, if error at all, was harmless.

**THEREFORE, IT IS HEREBY ORDERED** that:

1. Respondent's Motion for Summary Judgment is **GRANTED**; and

2. Petitioner's Petition for a Writ of Habeas Corpus is **DISMISSED**.

Signed: February 23, 2009

Graham C. Mullen
United States District Judge

13